# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

MOLSON COORS BEVERAGE
COMPANY USA, LLC, a Delaware limited
liability company,

    *Plaintiff,*

    v.

JOSEPH PAULINE, an individual, and THE
LAUNDRY ROOM, a California general
partnership,

    *Defendants.*

Civil Action No. _____

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Molson Coors Beverage Company USA, LLC ("Plaintiff" or "Molson Coors"), by and through its undersigned attorneys, for its Complaint against Defendants Joseph Pauline ("Pauline") and The Laundry Room (collectively, "Defendants"), alleges and states as follows:

## INTRODUCTION

1. Since at least the early 1980s, Molson Coors, by itself and through its predecessors in interest, has used and continues to use the well-known and distinctive trademark BEER WOLF (the "BEER WOLF Trademark") in connection with its COORS LIGHT beverage products, as well as an array of complementary merchandise associated therewith, including apparel and accessories.

2. Molson Coors' claims in this proceeding arise from the Defendants' improper use of Molson Coors' BEER WOLF Trademark in violation of Molson Coors' trademark rights, Pauline's willfully improper federal registration of the mark BEER WOLF, and The Laundry Room's breach of a license agreement between it and Molson Coors.

1

3. This is an action for injunctive and monetary relief against Defendants for false designation of origin, unfair competition, and false association under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cancellation of federal trademark Registration No. 7,706,355, improperly registered by Pauline, under 15 U.S.C. §§ 1119 and 1064; and injunctive and monetary relief for common law trademark infringement, unfair competition, breach of contract under Wisconsin law, and monetary relief for deceptive trade practices under Wisconsin law.

## THE PARTIES

4. Plaintiff, Molson Coors Beverage Company USA, LLC, is a Delaware limited liability company with its principal place of business at 320 South Canal Street, 36th Floor, Chicago, Illinois 60606, as well as at 3939 W Highland Boulevard, Milwaukee, Wisconsin, 53208.

5. On information and belief, Defendant The Laundry Room is a general partnership organized in California with its principal place of business at 3309 W Sussex Way, Fresno, California 93722, and is composed of individuals Defendant Joseph Pauline and Jonathan Pauline.

6. On information and belief, Defendant Joseph Pauline is an individual residing in Oakhurst, California. On information and belief, Jonathan Pauline is an individual residing in Spokane, Washington.

7. On information and belief, Defendant Joseph Pauline is the Chief Business Officer of The Laundry Room. Joseph Pauline can be held jointly and severally liable for the actions of The Laundry Room as a partner in a general partnership.

2

8. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), because this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq.

9. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has supplemental jurisdiction over Molson Coors' state law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal claims asserted herein.

11. This Court has personal jurisdiction over The Laundry Room, as The Laundry Room purposefully availed itself of laws of the State of Wisconsin by signing and entering the License Agreement, which is governed by Wisconsin law through a choice of law provision. Additionally, the License Agreement includes a forum selection clause requiring all parties to consent to the personal jurisdiction of, and bring all legal proceedings associated with the License Agreement before, the state and federal courts of Milwaukee, Wisconsin.

12. This Court has personal jurisdiction over Pauline because, as the signatory of the License Agreement and a partner in the general partnership of The Laundry Room, he purposefully availed himself of laws of the State of Wisconsin and consented to the personal jurisdiction of courts within Milwaukee, Wisconsin through signing and entering the License Agreement.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Additionally, the parties to the License Agreement waived their rights to any other venue.

## FACTS COMMON TO ALL ALLEGATIONS

**A. Molson Coors and the BEER WOLF Trademark**

14. Molson Coors is an internationally renowned beverage and brewing company that makes, distributes, markets, and sells various beverages, including beer, in interstate commerce.

15. Molson Coors also makes, distributes, markets, and sells complementary products under Molson Coors' trademarks, often under license, including apparel and other accessories.

16. Beginning in at least 1983, Molson Coors and its predecessors in interest began using its BEER WOLF Trademark in connection with its beverage products, as well as complementary products under Molson Coors' trademarks, often under license, including apparel and other accessories. In particular, the BEER WOLF Trademark, used by itself and with other words and designs, has been used and continues to be used in connection with Molson Coors' well-known COORS LIGHT beverage products.

17. Merchandise depicting the Beer Wolf and using the BEER WOLF Trademark was, and continues to be, sold by Molson Coors and third-party licensees. Several examples are shown below:

  

4

  

18. Molson Coors' BEER WOLF Trademark is strong and distinctive. Molson Coors has promoted, marketed, and sold, and continues to promote, market, and sell merchandise extensively in United States commerce under the BEER WOLF Trademark. The BEER WOLF Trademark has been, and continues to be, a quintessential and much-loved part of Molson Coors' brand identity used with Molson Coors' famous COORS LIGHT brand product line and a key part of the COORS LIGHT trademark family. Because of such advertising, promotion, and sales under the BEER WOLF Trademark, Molson Coors has developed substantial goodwill and strong common law rights in connection with the BEER WOLF Trademark.

19. On information and belief, consumers uniquely associate the BEER WOLF Trademark with Molson Coors, and particularly with its COORS LIGHT beverage products and associated merchandise and advertising.

20. On information and belief, as a result of the substantial goodwill and reputation developed by Molson Coors in the BEER WOLF Trademark, the BEER WOLF Trademark is recognized as the name or identity of Molson Coors, and its predecessors, in that the mark points uniquely and unmistakably to Molson Coors.

21. On information and belief, Molson Coors' rights to the BEER WOLF Trademark predate the complained-of conduct in this Complaint.

5

**B. The License Agreement**

22. On or about December 7, 2020, Pauline, in his capacity as a representative of The Laundry Room, approached Molson Coors seeking to license various Molson Coors' trademarks, including the COORS LIGHT trademark and the BEER WOLF Trademark, to permit The Laundry Room to make and sell various apparel and accessory items bearing the trademarks.

23. On June 15, 2021, Molson Coors, as licensor, entered into a non-transferable, non-exclusive retail license agreement ("the License Agreement") with Defendant The Laundry Room, as licensee.

24. The License Agreement permitted The Laundry Room to use certain Molson Coors' trademarks, including the BEER WOLF Trademark, in connection with the design, manufacture, and sale of apparel and accessory items.

25. On information and belief, the License Agreement was signed by Pauline, in his capacity as a partner and the Chief Business Officer of The Laundry Room.

26. A copy of the License Agreement, including applicable amendments and confirmation of renewals, is attached hereto as Exhibit A.

27. The BEER WOLF Trademark, the Beer Wolf character, and related designs are part of the COORS LIGHT brand and were considered and treated as such by all parties to the License Agreement. For example, these trademarks were included in brand collaboration documents and design approval requests, as required pursuant to Molson Coors' quality control obligations.

6

28. The Laundry Room materially breached multiple provisions of the License Agreement, including but not limited to:

a) Paragraph 4.3: LICENSEE shall not have the right to manufacture, offer for sale, distribute, sell, or use any Licensed Product or packaging, promotional or advertising material unless it has complied with all of the approval procedures and requirements set forth in this Section 4, and has obtained prior written approval of such Licensed Products or item of packaging, promotional or advertising material from LICENSOR. Failure by LICENSEE to comply with the provisions of this Section 4 shall constitute a material breach of this Agreement and shall be grounds for immediate termination of this Agreement by LICENSOR. In order to ensure that each Licensed Product or item of packaging, promotional or advertising material reflects LICENSOR'S current brand direction and strategy, the following applies relative to approval expiration: (1) approvals given by LICENSOR expire after two (2) years and LICENSEE must resubmit the Licensed Product to LICENSOR to renew the approval, and (2) if LICENSOR has notified LICENSEE of a brand design change to the Licensed Brand used in an approved Licensed Product, then such approval shall expire six (6) months after such notification. LICENSOR'S approval or disapproval of any Licensed Product or advertising material submitted by LICENSEE will be at LICENSOR'S sole discretion, even if such Licensed Product or advertising material was approved previously.

7

b) Paragraph 9.3: LICENSEE hereby acknowledges the validity of LICENSOR'S full and exclusive rights in and to the Licensed Brand and Designs as well as LICENSOR'S ownership of the Licensed Brand, Designs and in all materials incorporating the Licensed Brand and shall not do, or permit to be done, anything that may tend to jeopardize the validity of, or diminish the value of, the Licensed Brand or in any way diminish the LICENSOR'S name and reputation. LICENSEE acknowledges that the Licensed Brand has acquired secondary meaning.

c) Paragraph 9.4: LICENSEE shall not acquire any trademark, copyright or other rights in and to the Licensed Brand or Designs by reason of LICENSEE'S use of the Licensed Brand or Designs under this Agreement and LICENSEE shall not attempt to obtain any trademark or copyright registration therefor. LICENSEE further agrees not to dispute, directly or indirectly, during the Term of this Agreement or thereafter, the validity or ownership of the Licensed Brand or Designs. LICENSEE hereby irrevocably assigns and transfers to LICENSOR any and all rights that LICENSEE may have with respect to the Licensed Brand or Designs including without limitation all goodwill associated therewith.

d) Paragraph 9.6: LICENSEE acknowledges LICENSOR'S exclusive right, title and interest in and to the Licensed Brand and the registrations that have issued therefore. LICENSEE will not at any time do or cause to be done any act contesting or in any way impairing or tending to impair such right, title and interest in the Licensed Brand. All

8

trademarks, copyrights, trade dress and goodwill associated therewith developed in connection with the use of the Licensed Brand by the LICENSEE shall inure to the benefit of LICENSOR. LICENSEE shall execute all such documents as may be reasonably requested by LICENSOR at any time to perfect and establish LICENSOR'S exclusive rights in and ownership of all trademarks, copyrights and trade dress, including executing written assignments of any such rights to LICENSOR by LICENSEE. LICENSEE further agrees that LICENSOR shall have the sole and exclusive right, with LICENSEE'S reasonable cooperation, to enforce its rights in the Licensed Brand and/or Designs and LICENSEE shall promptly notify LICENSOR of any infringement of LICENSOR'S rights which may come to its attention.

29. Due to The Laundry Room's breaches of the License Agreement, Molson Coors gave notice that it was terminating the License Agreement on September 29, 2025.

30. On information and belief, Defendants have continued to make unauthorized use of the BEER WOLF Trademark in commerce after the termination of the License Agreement.

**C. U.S. Trademark Registration No. 7,706,355**

31. On July 25, 2024, without the authorization or knowledge of Molson Coors, Pauline filed a federal trademark application for the BEER WOLF mark, inaccurately listing himself as the owner of the mark, for "clothing, namely, tops, bottoms, shirts, jeans, dresses, beanies, hats, tank tops, jackets, pants, scarves, shorts, and sweatshirts" in International Class 25, which matured to registration on February 25, 2025, and was assigned Registration No. 7,706,355. A copy of U.S. Trademark Registration No. 7,706,355 is attached hereto as Exhibit B.

9

32. The Registration Certificate identifies a date of first use of October 15, 2021, which roughly corresponds to the date that The Laundry Room first sold products under the License Agreement.

33. Pauline's claim regarding use of the BEER WOLF trademark made in the declaration Pauline filed with the federal application is improper in that all use of the mark inures to the benefit of Molson Coors pursuant to the License Agreement.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract (The Laundry Room)

34. Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 33 above as though fully set forth herein.

35. The License Agreement, dated June 15, 2021, between Molson Coors and The Laundry Room was, and has been during all relevant time periods, a valid, binding, and enforceable agreement between the parties.

36. On information and belief, The Laundry Room is a general partnership and Pauline is a partner. Pauline is liable for breaches of contract by The Laundry Room.

37. The BEER WOLF Trademark was covered by the License Agreement.

38. Both the Defendants' and Molson Coors' performance of the License Agreement indicated that the BEER WOLF Trademark was covered by the License Agreement.

39. Molson Coors has at all times performed all of its obligations under the License Agreement, or has been excused from performance thereof.

40. Defendants materially breached the License Agreement in several ways, including but not limited to:

10

a) Failing to comply with the approval procedures and requirements of Section 4;

b) Assertions of trademark rights in the BEER WOLF Trademark by Pauline, a partner of The Laundry Room;

c) Failing to stop the assertions of trademark rights in the BEER WOLF Trademark by Pauline;

d) Failing to immediately discontinue all use, including selling of the Licensed Brand; and

e) Failing to return to Molson Coors all materials related to the Licensed Brand.

41.     Due to the direct and proximate cause of Defendants' material breaches of the License Agreement, Molson Coors has been and will continue to be damaged.

### COUNT II
### Federal False Designation of Origin, Unfair Competition, and False Association Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Against All Defendants)

42.     Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 41 above as though fully set forth herein.

43.     Molson Coors owns valid and protectable trademark rights in the BEER WOLF Trademark, which predate any use by Defendants.

44.     Defendants' unauthorized use of the BEER WOLF Trademark in connection with the advertising, promotion, marketing, offer for sale, sale, and distribution of Defendants' products falsely indicates that Defendants are connected with, sponsored, endorsed, authorized or approved by, or affiliated with Molson Coors, and constitutes a false designation of origin and a false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

11

45. Defendants' unauthorized use of the BEER WOLF Trademark is likely to cause, and has caused, confusion, mistake, or deception as to the source, origin, affiliation, connection, or association of Defendants' products with Molson Coors, and as to whether Defendants' products are manufactured, sold, authorized, endorsed, sponsored, or approved by Molson Coors.

46. On information and belief, Defendants have committed these acts with actual knowledge of Molson Coors' rights in the BEER WOLF Trademark, willfully and intentionally violating 15 U.S.C. § 1125(a).

47. By reason of the foregoing, Defendants' conduct has caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Molson Coors and to the goodwill associated with the BEER WOLF Trademark, for which Molson Coors has no adequate remedy at law.

### COUNT III
### Cancellation of Federal Trademark Registration No. 7,706,355 Pursuant to 15 U.S.C. §§ 1119, 1051, 1052 and 1064 (Against Joseph Pauline)

48. Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 47 above as though fully set forth herein.

49. Pauline, without authorization from Molson Coors, applied to register the BEER WOLF trademark, identifying himself as the owner (Application Serial No. 98666148). Application Serial No. 98666148 has matured to registration (Reg. No. 7,706,355).

50. Molson Coors has used its BEER WOLF Trademark in interstate commerce for decades, predating Pauline's claimed first use date and the application filing date. Molson Coors therefore has prior rights to the BEER WOLF Trademark.

51. The mark that is the subject of Reg. No. 7,706,355 and Molson Coors' BEER WOLF Trademark are identical in appearance, sound, meaning, and commercial impression.

52. The goods covered by Reg. No. 7,706,355 are identical, or at a minimum closely related and offered to the same or overlapping classes of purchasers, to those of the BEER WOLF Trademark.

53. The BEER WOLF mark, when used in connection with the goods covered by Reg. No. 7,706,355, is likely to cause confusion, to cause mistake, and to deceive the trade and public, who would believe that such goods originate with, are approved, sponsored or endorsed by, or have some connection or affiliation with Molson Coors. Accordingly, registration of Reg. No. 7,706,355 would and does damage Molson Coors, and registration, therefore, should be cancelled pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052.

54. Reg. No. 7,706,355 is void *ab initio* on the grounds that the owner is misidentified in violation of 15 U.S.C. § 1051(a)(1).

55. On information and belief, Pauline had no bona fide use of the BEER WOLF Trademark on or before filing date of Reg. No. 7,706,355 in violation of 15 U.S.C. § 1051(a)(1), rendering the use-based application void *ab initio*.

56. When filing the application for Reg. No. 7,706,355, Pauline falsely represented to the USPTO that he was the owner of the BEER WOLF Trademark and that no other person had the right to use the BEER WOLF Trademark in commerce.

57. On information and belief, Pauline signed the declaration associated with application for Reg. No. 7,706,355 with the intent to deceive the USPTO regarding his alleged rights in the mark.

58. The USPTO relied upon Pauline's false statements when issuing the Certificate of Registration for Reg. No. 7,706,355.

59. Due to Pauline's false statements, that were knowingly made with the intent to deceive the USPTO, and the USPTO's subsequent reliance on Pauline's false statements as the

basis upon which it issued the Certificate of Registration for Reg. No. 7,706,355, Reg. No. 7,706,355 was fraudulently obtained under 15 U.S.C. § 1064(3).

60. Due to the identical nature of the BEER WOLF Trademark and the mark that is the subject of Reg. No. 7,706,355 and the parties' goods, the mark BEER WOLF as reflected in Reg. No. 7,706,355, falsely suggests a connection with Molson Coors and Molson Coors' offerings in violation of 15 U.S.C. § 1052(a).

61. Reg. No. 7,706,355 infringes on Molson Coors' preexisting trademark rights, is void *ab initio* on the grounds of incorrect ownership and lack of bona fide use, falsely suggests a connection with Molson Coors and Molson Coors' Goods, and was fraudulently obtained. Reg. No. 7,706,355 should therefore be cancelled pursuant to 15 U.S.C. §§ 1119 and 1064.

## COUNT IV
### Common Law Trademark Infringement Under Wisconsin Law (Against All Defendants)

62. Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 61 above as though fully set forth herein.

63. Molson Coors has valid and protectable common law trademark rights to the exclusive use of the BEER WOLF Trademark, which predate any use by Defendants.

64. Molson Coors uses, and has used, the BEER WOLF Trademark to advertise, promote, and sell products, including but not limited to merchandise such as apparel, in interstate commerce.

65. The BEER WOLF marks used by Defendants in connection with their products are identical or confusingly similar to Molson Coors' BEER WOLF Trademark.

66. Defendants' use of the BEER WOLF Trademark is likely to cause confusion among consumers as to the source, origin, sponsorship, or affiliation of Defendants' products with Molson Coors.

14

67. On information and belief, Defendants' unauthorized use of the BEER WOLF Trademark has been undertaken willfully and intentionally.

68. By reason of the foregoing, Defendants' conduct constitutes common law trademark infringement under Wisconsin law, has caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Molson Coors and to the goodwill associated with the BEER WOLF Trademark. Molson Coors has no adequate remedy at law.

**COUNT V**
**Unfair Competition in Violation of Wisconsin Common Law and Wis. Stat. §100.20**
**(Against All Defendants)**

69. Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 68 above as though fully set forth herein.

70. Defendants' willful unauthorized use of the BEER WOLF Trademark in the advertising, promotion, marketing, offer for sale, sale, and distribution of Defendants' products constitutes an unlawful, unfair, or fraudulent business practice under Wisconsin common law and Wis. Stat. § 100.20.

71. Defendants' willful unauthorized conduct in trading on the goodwill associated with the BEER WOLF Trademark belonging exclusively to Molson Coors, is likely to cause others to be confused, mistaken or deceived into believing that there is a relationship between Defendants and Molson Coors, or that Defendants' goods are affiliated with or sponsored by Molson Coors.

72. Molson Coors has suffered pecuniary loss as a result of Defendants' violations, including but not limited to loss of control over the goodwill associated with the BEER WOLF Trademark, damage to Molson Coors' business reputation, and diversion of sales and customers.

73. By reason of the foregoing, Defendants' conduct has caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Molson Coors and to the goodwill associated with the BEER WOLF Trademark. Molson Coors has no adequate remedy at law.

## COUNT VI
### Deceptive Trade Practices in Violation of Wis. Stat. § 100.18(1) (Against All Defendants)

74. Molson Coors realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 73 above as though fully set forth herein.

75. On information and belief, Defendants made or caused to be made and placed before the public untrue, deceptive, or misleading assertions and representations in connection with the marketing, offer for sale, sale, or distribution of merchandise bearing the BEER WOLF Trademark.

76. On information and belief, Defendants' untrue, deceptive, or misleading assertions and representations were made with the intent to induce the public to enter into a contract or obligation relating to the purchase, sale, or use of merchandise.

77. By reason of the foregoing, Defendants' conduct has caused Molson Coors to suffer pecuniary harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Molson Coors Beverage Company USA, LLC respectfully requests that this Court enter judgment in its favor and against Defendants Joseph Pauline and The Laundry Room, and grant the following relief:

A. A judgment that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), through acts of false designation of origin, unfair competition, and false association;

16

B. An Order pursuant to 15 U.S.C. § 1119 directing the USPTO to cancel U.S. Trademark Registration No. 7,706,355 because it was registered in violation of 15 U.S.C. §§ 1051, 1052 and 1064;

C. A judgment that Defendants have committed acts of common law trademark infringement in violation of Wisconsin common law;

D. A judgment that Defendants have committed acts of unfair competition in violation of Wisconsin common law and Wis.Stat. § 100.20;

E. A judgment that Defendants have materially breached the License Agreement and are liable to Molson Coors for all resulting damages, including actual damages, consequential damages, lost profits, and such other damages as may be proven at trial or are otherwise available at law or in equity;

F. A judgment that Defendants have violated Wis. Stat. § 100.18 through deceptive trade practices;

G. That Defendants, their officers, directors, agents, servants, employees, successors, assigns, and attorneys, and all those controlled by or in active concert or participation with them, be permanently enjoined and restrained from:

  i. Using any name, mark, or design that comprises or includes the BEER WOLF Trademark or any other mark, logo, name, or designation that is identical to or confusingly similar to the BEER WOLF Trademark, in any font, style, or typeface, including as a domain name, social media handle, hashtag, metatag, keyword, or other such designation, that gives rise to a likelihood of confusion, mistake, or deception with respect to Molson Coors' BEER WOLF Trademark;

  ii. Engaging in any conduct, behavior, or action to induce the mistaken belief that Defendants or Defendants' goods and/or services are in any way affiliated with, associated with, or sponsored by Molson Coors;

iii. Trading on the goodwill associated with the BEER WOLF Trademark and passing off their goods and/or services as those of Molson Coors;

iv. Injuring Molson Coors' business reputation and the goodwill associated with its BEER WOLF Trademark;

v. Otherwise unfairly competing with Molson Coors in any manner whatsoever; and

vi. Registering or applying for registration of any trademark, service mark, domain name, trade name, or any other source identifier consisting of or incorporating the BEER WOLF Trademark, or any mark that is identical to or confusingly similar to the BEER WOLF Trademark, or that is likely to cause confusion, mistake, or deception as to whether Molson Coors is the source of such goods or services;

H. That, pursuant to Section 11 of the License Agreement, Defendants be ordered to deliver to Molson Coors all inventory and material relating to the BEER WOLF Trademark or the COORS LIGHT trademark, including but not limited to all artwork, color separations, and prototypes, including any tangible confidential information;

I. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon Molson Coors within thirty (30) days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

J. That Molson Coors be awarded monetary relief in an amount to be fixed by the Court in its discretion, including but not limited to:

i. All profits received by Defendants as a result of their unlawful actions, said amount to be trebled due to Defendants' willful misconduct;

18

ii. All damages sustained by Molson Coors as a result of Defendants' unlawful acts, including but not limiting to any and all royalties owed pursuant to the license agreement, said amount to be trebled due to Defendants' willful actions;

iii. Punitive damages; and

iv. Damages as mandated by Wis. Stat. § 100.18(11)(b)(2), together with costs and reasonable attorneys' fees as provided therein;

K. That Defendants be ordered to compensate Molson Coors for the advertising and other expenditures necessary to dispel any public confusion caused by Defendants' unlawful acts complained of herein;

L. That, because of the exceptional nature of this case resulting from Defendants' deliberate and willful actions, this Court award to Molson Coors all reasonable attorneys' fees, costs, and disbursements incurred by Molson Coors as a result of this action;

M. That the Court require Defendants to pay prejudgment interest on any and all monetary awards, costs, and expenses for this suit to which Molson Coors is entitled; and

N. That the Court order all other and further relief that it deems proper and just.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Molson Coors demands trial by jury in this action on all issues triable by jury.

Respectfully submitted,

**MOLSON COORS BEVERAGE COMPANY USA, LLC**

Dated: March 17, 2026      By:   /s/ Jeffry Nichols

Howard S. Michael
Virginia W. Marino
Kristen K. Downer
Audrey J. Nankervis
Jeffry M. Nichols (IL Bar No. 06273317)
Crowell & Moring LLP
300 N. LaSalle Drive
Suite 2500
Chicago, Illinois 60654
Telephone: (312) 321-4200
E-mail: hmichael@crowell.com;
vmarino@crowell.com;
kdowner@crowell.com;
anankervis@crowell.com
jnichols@crowell.com

Attorneys for Plaintiff

20