UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MOLSON COORS BEVERAGE COMPANY USA LLC,

Plaintiff,

v.

Case No. 26-cv-0429-bhl

JOSEPH PAULINE and THE LAUNDRY ROOM,

Defendants.

## ORDER DENYING MOTION TO DISMISS

On March 17, 2026, Plaintiff Molson Coors Beverage Company USA LLC (Molson Coors) filed a complaint against The Laundry Room, a California general partnership, and one of its general partners, Joseph Pauline (Pauline). (ECF No. 1.) Molson Coors claims that The Laundry Room breached a Retail License Agreement (the License Agreement) that it signed with Molson Coors and asserts claims against both defendants for violations of the Lanham Act and under three state law theories. (*Id.*) The Laundry Room has answered and denied any liability. (ECF No. 15.) Pauline, however, has moved to dismiss, arguing that he is not subject to personal jurisdiction in this Court and that the allegations in Molson Coors' complaint are insufficient to proceed. (ECF No. 13.) For the reasons set forth below, the motion will be denied. The Court will set a scheduling conference once Pauline has answered.

## BACKGROUND ALLEGATIONS[1]

Molson Coors is a beverage and brewing company with its principal place of business in Chicago, Illinois, and Milwaukee, Wisconsin. (ECF No. 1 ¶¶4, 14.) The Laundry Room is a general partnership based in Fresno, California. (*Id.* ¶5.) Pauline is the Chief Business Officer

[1] The Background Allegations are derived from Molson Coors' complaint, (ECF No. 1), the allegations in which are presumed true when considering a motion to dismiss, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007), and documents attached to and incorporated by reference in the complaint, *see Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013); *see also* Fed. R. Civ. P. 10(c).

and Partner of The Laundry Room. (*Id.* ¶6; ECF No. 1-1 at 16.) He resides in Oakhurst, California. (ECF No. 1 ¶6.)

Molson Coors states that since at least 1983, it has used the trademark BEER WOLF in connection with its COORS LIGHT beverage products. (ECF No. 1 ¶¶1–2, 16.) Molson Coors and third-party licensees have sold merchandise depicting the BEER WOLF trademark, which Molson Coors contends is a "key part of the COORS LIGHT trademark family." (*Id.* ¶¶17–18.) Molson Coors states that BEER WOLF is uniquely associated with its brand, and that it has "strong common law rights" to the trademark. (*Id.*)

On December 7, 2020, Pauline approached Molson Coors about licensing the COORS LIGHT and BEER WOLF trademarks to The Laundry Room so it could sell apparel and accessories with the trademarks. (*Id.* ¶22.) The parties entered into a License Agreement on June 15, 2021, permitting The Laundry Room and Pauline to use Molson Coors' COORS LIGHT and BEER WOLF trademarks on apparel and accessory items. (*Id.* ¶¶22–24.) The BEER WOLF trademark, Beer Wolf character, and related designs fell under the COORS LIGHT brand. (*Id.* ¶27.) Molson Coors states the parties treated the BEER WOLF trademark and character as part of the COORS LIGHT brand, as the trademarks were included in brand collaboration documents and design approval requests that Molson Coors required. (*Id.*)

On July 25, 2024, Pauline applied to register a trademark for BEER WOLF with the United States Patent and Trademark Office (USPTO) without Molson Coors' authorization or knowledge. (*Id.* ¶31; ECF No. 1-2.) In the application, he listed himself as the owner of the mark for various clothing items. (ECF No. 1 ¶31.) The application matured to registration on February 25, 2025. (*Id.*) The trademark registration had a "date of first use" of October 15, 2021, when The Laundry Room first sold products under its agreement with Molson Coors, in violation of the License Agreement. (*Id.* ¶32.)

On September 29, 2025, Molson Coors gave notice that it was terminating the License Agreement because The Laundry Room had breached various provisions relating to Molson Coors' exclusive brand rights, brand ownership, and prohibitions on acquiring trademarks for the licensed brand. (*Id.* ¶¶28–29.) Once Molson Coors terminated the License Agreement, The Laundry Room continued to improperly use the BEER WOLF trademark. (*Id.* ¶¶29–30.)

## ANALYSIS

### I. As a General Partner of The Laundry Room, Pauline Is Subject to the Court's Personal Jurisdiction.

Pauline first seeks dismissal for lack of personal jurisdiction. He argues that he has no contacts with Wisconsin, and that Molson Coors is implicating him in this matter solely in his capacity as a representative of The Laundry Room. (ECF No. 13 at 3.) He further contends that this is insufficient to establish personal jurisdiction, because the License Agreement only binds The Laundry Room and the fiduciary-shield doctrine protects corporate representatives like him whose contacts with the forum are solely on behalf of the corporation. (*Id*. at 3–4.)

A federal district court has personal jurisdiction over a defendant who would be subject to the jurisdiction of the state court where the federal court is located. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020). Under Wisconsin's long-arm statute, a defendant is subject to personal jurisdiction when he engages in practices, services, or promises in or relating to the state. Wis. Stat. Ann. §801.05. In addition, the exercise of personal jurisdiction over the defendant must be consistent with the due process requirements of the Fourteenth Amendment. *See NBA Props. Inc. v. HANWJH*, 46 F.4th 614, 620–21 (7th Cir. 2022). Wisconsin's long-arm statute reaches the fullest extent allowed under the due process clause. Wis. Stat. Ann. §801.05; *Banta Corp. v. Hunter Pub. Ltd. P'ship*, 915 F. Supp. 80, 82 (E.D. Wis. 1995); *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990) (collecting cases). To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum, such that the maintenance of the lawsuit "does not offend traditional notions of fair play and substantial justice." *NBA Props.*, 46 F.4th at 621 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 323 (1945)). The requirements of personal jurisdiction can also be satisfied by consent. *BouMatic LLC v. Idento Operations, BV,* 759 F.3d 790, 793 (7th Cir. 2014). A defendant's agreement to a forum selection clause is sufficient to confer consent to personal jurisdiction as a contractual matter. *TruServ Corp. v. Flegles*, 419 F.3d 584, 589 (7th Cir. 2005).

There is no question that The Laundry Room has consented to this Court's personal jurisdiction in the forum selection clause in the License Agreement. (ECF No. 1-1 §13.2; ECF No. 13 at 4). In Section 13.2 of the License Agreement, The Laundry Room expressly consents to personal jurisdiction in "the state and federal courts located in Milwaukee, Wisconsin." (ECF No.

1-1 §13.2; ECF No. 21 at 5.) Because the complaint alleges that Pauline is a partner in The Laundry Room, this consent also defeats his personal jurisdiction objection.

According to the complaint, The Laundry Room is a California general partnership. (ECF No. 1 ¶5.) According to the License Agreement and complaint, Pauline is a general partner of The Laundry Room. (ECF No. 1-1 at 26; ECF No. 1 ¶36.) It is well-established that "[p]ersonal jurisdiction over a partnership has been found sufficient to establish personal jurisdiction over the general partners by virtue of the general partners' role as agents and principals of the partnership." *Banta Corp.*, 915 F. Supp. at 84. The "contacts that bring [the partnership] into court equally support the assertion of personal jurisdiction over each of its general partners." *Felicia, Ltd. v. Gulf Am. Barge, Ltd.*, 555 F. Supp. 801, 806 (N.D. Ill. 1983). This is because general partners are "both agents and principals" of a partnership, meaning "they do not represent the partnership, they *are* the partnership." *Id.* (emphasis in original). Accordingly, Pauline is bound by The Laundry Room's consent to personal jurisdiction in this Court. *See Banta Corp.*, 915 F. Supp. at 84; *Felicia, Ltd.*, 555 F. Supp. at 806.

Pauline offers two challenges to this basic principle. First, he argues that the forum selection clause only binds The Laundry Room and Molson Coors. (*See* ECF No. 22 at 6–8.) But he does not cite a single legal authority for this proposition. And his argument ignores the nature of a general partnership and the basic law of agency. As The Laundry Room's general partner, Pauline is bound by the partnership's actions. Second, Pauline invokes the fiduciary-shield doctrine. (ECF No. 13 at 3–4.) This doctrine generally prohibits a court from exercising personal jurisdiction over an individual whose presence and activity in the forum state was solely on behalf of his employer or other principal. *See Reger v. Beason*, 805 F. Supp. 3d 864, 870 (N.D. Ill. 2025). Pauline's invocation of the fiduciary-shield doctrine fails because courts have long recognized that the doctrine does not apply to general partners. *See Beesen-Dwars v. Morris*, No. 06 C 5593, 2007 WL 2128348, at *5 (N.D. Ill. July 24, 2007) (citing *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1164 (N.D. Ill. 1995)). And, as Molson Coors points out, the doctrine has not been adopted in Wisconsin in any event. (ECF No. 21 at 10); *Druschel v. Cloeren*, 723 N.W.2d 430, 436 (Wis. 2006); *Hardin Roller Corp. v. Universal Printing Mach.*, 236 F.3d 839, 842 (7th Cir. 2001). As a result, Pauline is subject to personal jurisdiction in this Court as a result of The Laundry Room's consent to jurisdiction and his relationship to the partnership.

## II. Molson Coors Has Adequately Pleaded Its Claims Against Pauline.

Pauline also argues that Molson Coors' claims against him must be dismissed for failure to comply with the requirements of the Federal Rules of Civil Procedure. First, he contends that the complaint refers to "Defendants" as a collective, without personally identifying any specific conduct by Pauline. (ECF No. 13 at 4.) He argues that this failure violates the basic notice pleading regimen adopted in the Federal Rules. (*Id.*) Second, Pauline argues that Molson Coors has pled inconsistent allegations that make its trademark cancellation claim implausible, and restates that the purported lack of personal jurisdiction means this Court cannot cancel the trademark under 15 U.S.C. § 1119. (*Id.* at 4–5.) Third, he insists that Molson Coors' trademark cancellation claim does not plead fraud with the particularity required by Rule 9(b). (*Id.* at 5.) According to him, the complaint is "conclusory" and does not "identify any specific false statement, when it was made, who made it, or facts supporting a plausible intent to deceive." (*Id.*)

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Important here, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. A defendant must be "on notice of the general claim that is being pressed against him." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019).

Pauline's first argument is a general challenge to the complaint and purports to seek dismissal because the complaint "repeatedly refers to 'Defendants' collectively without identifying specific conduct attributable to Mr. Pauline individually." (ECF No. 13 at 4.) He does not identify, however, the particular claims of which he believes he has received insufficient notice. (*Id.*) Regardless, as Molson Coors points out, "'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles*, 354 F. Supp. 3d at 875; (ECF No. 21 at 11.)

Pauline's reliance on *Bank of America v. Knight* is misplaced. (ECF No. 13 at 4.) In that case, the Seventh Circuit affirmed a district court's dismissal of claims where the plaintiff filed multiple amended complaints that did not specify what any of the individual defendants personally did. As the Court of Appeals explained, "[a]n allegation that *someone* looted a corporation does not propound a plausible contention that a *particular person* did anything wrong." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). That's not what Miller Coors' complaint alleges here. Its complaint includes specific allegations about Pauline's conduct. He "approached Molson Coors seeking to license various Molson Coors' trademarks." (ECF No. 1 ¶22.) He signed the agreement in his capacity as a partner and the Chief Business Officer of The Laundry Room. (*Id.* ¶25.) Then, having entered into the agreement to sell Molson Coors' apparel, Pauline filed a trademark application for the BEER WOLF mark and asserted that he was the trademark's owner for clothing and accessories. (*Id.* ¶¶31–33.) Molson Coors asserts that this application was improper because it was the rightful owner of the mark, and Pauline registered it without Molson Coors' consent. (*Id.* ¶33.) These instances of specific actions provide adequate notice to Pauline of the conduct Molson Coors believes is wrongful under Fed. R. Civ. P. 8(a).

Pauline's next argument pertains to Count III, which asks this Court to cancel Pauline's BEER WOLF trademark under 15 U.S.C. §1119. (ECF No. 1 ¶61.) Pauline argues this Court does not have the authority to cancel the trademark registration for two reasons. He contends there are inconsistencies in the complaint that make the allegations implausible. He says Plaintiff's arguments that "Mr. Pauline improperly claimed ownership and that rights in the mark belong to Plaintiff and [The Laundry Room are] mutually inconsistent." (ECF No. 13 at 5.) To support this, he cites Molson Coors' separate cancellation proceeding against him in the Trademark Trial and Appeal Board (TTAB). [2] (*Id*; *see generally* ECF No. 14-1.) But the supposed inconsistency is unclear. In both the underlying TTAB proceeding and this matter, Molson Coors seeks to cancel Pauline's trademark registration for BEER WOLF because it allegedly belongs to Molson Coors. (ECF No. 1 ¶33; ECF No. 14-2 at 8–11.) As discussed, these facts are articulated with enough specificity to meet the pleading standard under Rule 8(a), because they allow the Court to draw an inference Pauline could be liable for the alleged conduct. *Iqbal*, 556 U.S. at 678. Pauline also

[2] Pauline requests the Court take judicial notice of certain documents. (ECF No. 14.) The documents are judicially noticeable matters of public record, TTAB proceedings and USPTO records, and Molson Coors has not indicated it opposes the request.

repeats his personal jurisdiction argument, stating that the court cannot hear the Section 1119 claim because he should not be a party to the lawsuit. (ECF No. 13 at 5.) That argument fails for the reasons stated above.

Finally, Pauline argues the trademark cancellation claim should be dismissed because Molson Coors does not meet the heightened pleading requirement for fraud. (*Id.*) Molson Coors states that "Pauline deceitfully filed a trademark application . . . fraudulently claiming ownership of the BEER WOLF mark, and representing that no other person had the right to use it." (ECF No. 21 at 14.) Further, "Pauline intended to deceive the USPTO when he falsely signed the declaration." (*Id.* at 14–15.) In sum, Molson Coors alleges that Pauline registered the trademark after he signed the License Agreement despite knowing of Molson Coors' rights. This meets the requirements of "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *United States ex rel. Gross v. AIDS Rsch. All.–Chi.*, 415 F.3d 601, 605 (7th Cir. 2005)).

The complaint alleges that Pauline made a false statement when registering the BEER WOLF trademark. *See in re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 47–48 (Fed. Cir. 1986)). This is unlike another fraud-based cancellation claim dismissed at the pleading stage, *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLC,* 262 F. Supp. 3d 605, 609 (N.D. Ill. 2017). In that case, the Plaintiffs "offer[ed] virtually no information about the nature of [the defendant's] alleged misrepresentations [and did] not allege that HBI made any affirmative false or misleading statement to the USPTO." *Id.* Here, Molson Coors points to a specific person (Pauline) acting to deceive the USPTO by claiming ownership over a trademark he knew was not his. That is sufficient to plead fraud under Rule 9(b).

**CONCLUSION**

Accordingly, for the reasons stated,

**IT IS HEREBY ORDERED** that Pauline's motion to dismiss, ECF No. 13, is **DENIED** pursuant to Fed. R. Civ. P. 12(b)(6).

Dated at Milwaukee, Wisconsin on September 23, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge